IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2012

## STATE OF TENNESSEE v. RICKY RAY STARNES

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S58561      R. Jerry Beck, Judge**

**No. E2011-02244-CCA-R3-CD - Filed December 21, 2012**

The appellant, Ricky Ray Starnes, pled guilty to a violation of a habitual traffic offender order, a Class E felony, and a violation of registration, a Class C misdemeanor. The trial court imposed a total effective sentence of two years. On appeal, the appellant challenges the trial court's denial of community corrections. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Joseph F. Harrison, Blountville, Tennessee, for the appellant, Ricky Ray Starnes.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Barry P. Staubus, District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant pled guilty to a violation of a habitual traffic offender order, a Class E felony, and to a violation of registration, a Class C misdemeanor. The plea agreement provided that the appellant would receive concurrent sentences of two years and one month and thirty days, respectively. As a Range II multiple offender, the appellant was eligible for release after serving thirty-five percent of his sentences in confinement. The plea agreement further provided that the trial court was to determine the manner of service of the sentences.

At the appellant's guilty plea hearing, the State recited the following factual basis for the appellant's guilty pleas:

> First, [the appellant] was declared an habitual traffic offender in the Criminal Court for Sullivan County, Tennessee, . . . and that order was in full force and effect when on September the 20th, 2010, Officer Andrea Mullins of the Kingsport Police Department observed a vehicle with a tag that, when run through dispatch, came back registered to a different vehicle.
>
> What had brought the tag to the attention of the officer was her observations that the tag had expired in 2007.
>
> She initiated a traffic stop on the vehicle, and identified the driver as [the appellant].
>
> [The appellant] told her that his license had been suspended for driving under the influence. When she checked with dispatch she determined that in fact [the appellant] was an habitual traffic offender.
>
> And at that time [the appellant] was charged with and arrested for an habitual traffic offender and the expired registration.
>
> . . . .
>
> It was stipulated by [the appellant] he is a Range [II] offender.

At the sentencing hearing, the State submitted as an exhibit the appellant's presentence report. Upon examining the report, the trial court noted that the fifty-four-year-old appellant had a lengthy criminal record, consisting of three previous convictions for violating a habitual traffic offender order; eleven driving under the influence (DUI) convictions; two violation of registration convictions; eight public intoxication convictions; an assault and battery conviction; an assault conviction; two misdemeanor theft convictions; four driving on a revoked license convictions; one misdemeanor resisting arrest conviction; one driving without a license conviction; one leaving the scene of an accident with property damage conviction; and one receiving stolen property conviction. Additionally, the appellant had a juvenile adjudication for automobile burglary. The appellant received suspended

sentences for many of his adult convictions. However, the presentence report did not reflect any probation violations.

According to the presentence report, the appellant attended school through the seventh grade. The appellant reported that his physical health was poor because he had problems with his heart, leg, lungs, and back. The appellant disclosed that he took medication for hypertension and for blood clots. The appellant maintained that his mental health was poor.

The report reflects that the appellant began using alcohol when he was fifteen years old and that he continued to drink alcohol at least three times per week. The appellant never sought treatment for his alcohol abuse problems.

The appellant testified at the sentencing hearing that he lived with his girlfriend and that he had been divorced since the late 1990s. The appellant said he had a seventeen-year-old daughter and did not pay child support because she received social security benefits. The appellant stated that he never earned a general equivalency diploma (GED) and that his ability to read and write was poor. The appellant stated that he worked as an electrician's assistant for thirty years, but in January 11, 2011, he began receiving disability checks because of blood clots in his leg, a rod in his leg, and heart problems.

The appellant maintained that he did not have a problem with drugs, but he acknowledged that he had a problem with alcohol. He said that he planned to stop drinking due to his impaired liver function.

The appellant said that before he started receiving his disability check, he was having a yard sale to earn money when a man stopped and told him there was a nice chair and television on the next block. The appellant put a tag on a car that was not his and went to get the items. During his trip, he was pulled over and arrested in the instant case. He conceded he made a mistake and asserted he would not do it again. The appellant said that he no longer drove and did not have a vehicle.

The appellant acknowledged that his criminal record was poor, but he maintained that it had been eleven or twelve years since his last trouble with the law. He said that he could obey the terms of any alternative sentence, noting that he had no previous probation violations.

The trial court stated that the appellant had a "'refrigerator class' prior record" of offenses involving alcohol yet he continued to abuse alcohol. The court acknowledged that the appellant had a good work history. Noting that the appellant was a Range II multiple offender, the court denied alternative sentencing. The court specifically considered

community corrections but found that the appellant had poor rehabilitative potential because he continued to offend despite having previously received the largess of probationary sentences.

On appeal, the appellant challenges the trial court's denial of alternative sentencing, specifically community corrections.

## II.  Analysis

Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness.  See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Susan Renee Bise, __ S.W.3d __, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *19 (Tenn. Crim. App. at Knoxville, Sept. 26, 2012).  Our supreme court has further explicitly stated that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Christine Caudle, __ S.W.3d __, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *5 (Tenn. at Nashville, Nov. 27, 2012).  In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment.  See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, __ S.W.3d __, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *11.  The burden is on the appellant to demonstrate the impropriety of his sentence.  See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, __ S.W.3d __, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *11; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." Id. at 345-46. "[They are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentences meet this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6).

In the instant case, although the appellant was convicted of a Class E felony, he is a Range II multiple offender; therefore, he is not considered to be a favorable candidate for alternative sentencing. Regardless, because the sentences imposed were ten years or less, the appellant was eligible for alternative sentencing.

The Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses . . . .

An offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

For offenders not eligible for community corrections under subsection (a), Tennessee Code Annotated section 40-36-106(c) creates a "special needs" category of eligibility. Subsection (c) provides that

> [f]elony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

When determining a defendant's suitability for alternative sentencing, courts should consider whether the following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), are applicable:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

-6-

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The trial court found, after considering the appellant's extensive criminal record, that the appellant's potential for rehabilitation was poor. As we noted earlier, the appellant has numerous prior convictions. In many of the cases, the appellant received a suspended sentence; yet, he has continued to reoffend. See State v. Alton Ray Thomas, No. M2006-00815-CCA-R3-CD, 2007 WL 465135, at *4 (Tenn. Crim. App. at Nashville, Feb. 13, 2007). We conclude that, given the appellant's extensive criminal record and his failure to rehabilitate, the trial court did not err in failing to sentence the appellant to community corrections.

### III.  Conclusion

In sum, we conclude that the trial court did not err in denying alternative sentencing. Therefore, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE